UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE BANANA CONNECTION, INC.,

                Plaintiff,

          - against -

M/V MAERSK SAN JUAN, et al.,

                Defendants.

**OPINION & ORDER**

**04 Civ. 9203 (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Plaintiff, The Banana Connection, Inc. ("Banana Connection"), filed suit on November 19, 2004, against defendants, Compania Sud-Americana de Vapores, S.A. ("CSAV") and Howland Hook Container Terminal ("Howland Hook"), claiming $10,231.50 in damage to a container of fresh green organic bananas shipped from Ecuador. On September 13, 2005, the parties consented to trial before this Court pursuant to 28 U.S.C. § 636(c). CSAV and Howland Hook have each moved for summary judgment against Banana Connection. For the following reasons, the defendants' motions for summary judgment are **GRANTED**. Howland Hook's request for attorney's fees, however, is **DENIED**.

## II. BACKGROUND

CSAV issued the port-to-port bill of lading for the container at issue in this case. *See* Declaration Pursuant to Local Rule 56.1(a), Garth Wolfson, attorney for defendant CSAV ("CSAV Rule 56.1(a) Decl."), Exh. C. The bill of lading indicates that the ocean vessel transporting the cargo was the Maersk San Juan. **Id**. According to Stanton Zebrowski ("Zebrowski"), president of Banana Connection, the company had three containers of bananas on

the ship, and the one at issue contained 960 boxes of bananas. Affidavit of Stanton Zebrowski in Opposition to the Defendants' Motions for Summary Judgment ("Zebrowski Aff.") ¶ 6. CSAV "controlled container space aboard the Maersk ships under a slot-charter agreement between CSAV and Maersk." **Id**. ¶ 7. The bill of lading lists another ship, the Mayview Maersk, in a separate column referring to "domestic routing." CSAV Rule 56.1(a) Decl., Exh. C. Zebrowski states that the containers were loaded onto the Maersk San Juan in Ecuador on November 6, 2003, transshipped to the Mayview Maersk at Balboa, Panama, on November 10, 2003, and discharged from that ship at the Port of New York on or about November 21, 2003. Zebrowski Aff. ¶ 8. Neither party has submitted any documents that verify these shipping and delivery dates. Indeed, Howland Hook submits that its company records do not show that the container was discharged to the terminal on the dates Zebrowski mentions. Declaration of Frank J. Scollo ("Scollo Decl.") ¶¶ 4-8.

Zebrowski further explains that the container at issue here was cleared by United States Customs, and departed from the terminal on November 26, 2003. Zebrowski Aff. ¶ 8. According to a police report submitted by Banana Connection, the truck carrying that container was thereafter involved in an accident on I-95 near Bridgeport, Connecticut. **Id**., Exh. 2. The police report states that after an inspection of the accident, in which the entire truck rolled over onto the passenger side, an officer determined that "locking pins" on the driver's side of the trailer "had not been working properly." **Id**. The front pin was "rusted to a point that it could not move" and the rear locking pin was "defective and had broken off." **Id**. This caused the container to come loose and shift to the right, forcing the truck to roll over. **Id**. The police report states that the carrier responsible was Howland Hook, and that the company would be

2

issued an infraction for failure to secure the load. **Id**.

As a result of the accident, Banana Connection's buyer, Turbana Corporation, rejected the container of bananas. **Id**. ¶ 21. According to Zebrowski, Turbana rejected the container without waiting to see whether the fruit had been affected by shock damage because "their experience has been that more likely than not the damage will show up; and they do not care to damage their reputation by selling damaged bananas." **Id**. ¶ 22. Apparently, shock damage does not become evident for a few days and shows no external damage, but instead manifests as internal bruising. **Id**. ¶ 25-26. Banana Connection was able to recover some of the lost proceeds by sending the bananas to a "banana jobber" for salvaging, receiving $1,920.00, two dollars per box, from Vitro Cedro & Sons. **Id**. ¶ 24; Exh. 4.

Banana Connection seeks to hold the ocean carrier, CSAV, and/or the terminal, Howland Hook, liable for the damage to its bananas caused in the accident. It asserts that the defective locking pins mentioned in the police report are those securing the container to the chassis, the piece of equipment on which the container is placed on at the terminal when it is unloaded from the ship. Zebrowski Aff. ¶ 12-13. Because it is refrigerated, the container is also fitted with a generator set to provide cold air to its interior. **Id**. ¶ 13. Both the container and chassis are hooked up to the tractor unit of the truck. **Id**. ¶ 12. Banana Connection asserts that CSAV supplied the defective chassis which led to the accident and is therefore liable pursuant to a "service agreement."[1] **Id**. ¶ 20.

---

[1] Banana Connection has asked permission to file a sur-reply and submit a copy of the service agreement. Defendants object on two grounds, one, that the service agreement is irrelevant for the same reasons argued herein, and, two, the service agreement was not produced in discovery. Although the Court ultimately finds that the service agreement is not dispositive, the Court will review it here.

## III. DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is only appropriate when no genuine issues of material fact exist; therefore, the successful moving party is entitled to judgment as a matter of law. **D'Amico v. City of New York**, 132 F.3d 145, 149 (2d Cir. 1998). The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986). In evaluating a motion under Federal Rule of Civil Procedure 56, the Court reviews the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, to show that there is no genuine issue of material fact." **Id**. at 322. The Court also reviews "the evidence in the light most favorable to the party against whom summary judgment is sought and [draws] all reasonable inferences in his favor." **L.B. Foster Co. v. Am. Piles Inc.**, 138 F.3d 81, 87 (2d Cir. 1998). However, a nonmoving party cannot rely on conclusory allegations or speculation, and "may not rest on the pleadings[,] but must further set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions showing a genuine issue exists for trial." **Cifarelli v. Village of Babylon**, 93 F.3d 47, 51 (2d Cir. 1996). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986). Furthermore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Id**. at 249-50 (citations omitted).

B.     **Carriage of Goods by Sea Act**

The Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1300 *et seq*, requires that a shipper "who wishes to recover against the carrier for damage to goods bears the initial burden of

proving both delivery of goods to the carrier . . . in good condition, and outturn by the carrier . . . in damaged condition." **Vana Trading Co. v. S.S. "Mette Skoum,"** 556 F.2d 100, 104 (2d Cir. 1977). If the plaintiff can establish this prima facie case, the burden shifts to the defendants, who may raise one of COGSA's statutory exceptions to liability. **Transatlantic Marine Claims Agency, Inc. v. M/V "OOCL Inspiration,"** 137 F.3d 94, 98 (2d Cir. 1998).

   1.   **CSAV's Liability**

In the absence of some supplemental contract, "COGSA only applies by its own force . . . during the period from the time when the goods are loaded on to the time when they are discharged from the ship." **Sony Computer Entm't Inc. v. Nippon Exp. U.S.A., Inc.**, 313 F. Supp. 2d 333, 337 (S.D.N.Y. 2004) (*citing* **Hartford Fire Ins. Co. v. Orient Overseas Containers Lines Ltd.**, 230 F.3d 549, 557 (2d Cir. 2000) (internal quotations omitted)). Banana Connection does not contend that the bill of lading submitted by CSAV includes what is referred to as a "Himalaya" clause which would include liability for damage incurred during inland transportation performed by the ocean carrier or its agents. **Id**. at 335. Instead, Banana Connection asserts that CSAV supplied the defective chassis which led to the accident, Zebrowski Aff. ¶ 20, and is therefore liable through the "service agreement." The only support for this assertion is a reference to a "chassis usage charge" in a list of charges appended to the agreement. Banana Connection concludes that CSAV was responsible for providing the chassis.

CSAV argues that even if the service agreement was in force and even if CSAV supplied a defective chassis, defendants are not liable for the damage because COGSA liability ended once the container was delivered to the terminal and made available for pickup. *See* **Harcrest Int'l Ltd. v. M/V Zim Keelung, et al.**, 1988 U.S. Dist. LEXIS 5755, at *36 (E.D. La. May 25,

1988).  In **Harcrest**, the court found that once the ocean carrier had delivered the container to the port, its liability ended because there had not yet been any damage to the container.  1988 U.S. Dist. LEXIS 5755, at *36.  The ocean carrier had provided a chassis which allegedly malfunctioned.  **Id**. at *36 n. 30.  The court noted that the plaintiff had not provided any evidence that the chassis was improperly maintained.  **Id** at *3 n.3 and *36 n.30.

CSAV also relies on **Crisis Transp. Co. v. M/V Erlangen Exp.**, 794 F.2d 185 (5th Cir. 1986).  In that case, the cargo was damaged when the truck driver drove under an overpass that was too low for the chassis that had been provided by the terminal.  **Id**. at 186, 188.  The court held that "[t]he carrier's obligation under COGSA . . . does not extend to proper placement on the consignee's chassis."  **Id**.at 188.  "General maritime law . . . requires only that a carrier 'unload the cargo onto a dock, segregate it by bill of lading and count, put it in a place of rest so that it is accessible to the consignee, and afford the consignee a reasonable opportunity to come and get it."  **Id**. (*quoting* **Tapco Nigeria, Ltd. v. M/V Westwind**, 702 F.2d 1252 (5th Cir. 1983).  Ultimately, ownership of the chassis was irrelevant under COGSA.

Banana Connection seeks to avoid the clear limitation of COGSA by focusing on an alleged defect in the locking pins on the chassis assumed to have been provided by CSAV.  This argument is unavailing.  To the extent that CSAV had any responsibility for the alleged defective pin, it was not grounded in COGSA.  Other federal rules require truckers to secure and inspect the cargo they carry.  For example, federal regulations state that "[n]o commercial motor vehicle shall be driven unless the driver is satisfied that the following parts and accessories are in good working order, nor shall any driver fail to use or make use of such parts and accessories when and as needed."  49 C.F.R. § 392.7 (listing parts to be inspected, including coupling devices).

6

The carrier is not liable under COGSA for damage that occurs after delivery has been accomplished.

### 2. Howland Hook's Liability

For its part, Howland Hook argues that the container was not delivered to its terminal as Banana Connection contends. Frank Scollo, Vice President of Administration, indicates that the company's records do not show that the container was discharged on November 21, 2003, as alleged in the complaint. Scollo Decl. ¶¶ 4-8. He states that he searched for references to either the Maersk San Juan and the Mayview Maersk (the two ships listed on the bill of lading). He determined that the Maersk San Juan did not discharge at Howland Hook "at or around the date of incident," and that the Mayview Maersk "never discharged cargo at Howland Hook." **Id**. ¶ 8 (emphasis in original).

Banana Connection has no direct evidence of Howland Hook's involvement but relies instead on the police report of the accident. The report indicates, by way of a checked box under "Source of Carrier Name," that the officer deduced that Howland Hook was the carrier of the cargo from the "Shipping Papers/Trip Manifest." Zebrowski Aff., Exh. 2. Even if the police report were admissible as a business record, the statement contained within, attributing the cargo to Howland Hook, would constitute inadmissible hearsay, *see* **Parsons v. Honeywell, Inc.**, 929 F.2d 901, 908 (2d Cir. 1991), which cannot constitute a material issue of fact to defeat summary judgment. **Patterson v. County of Oneida**, 375 F.3d 206, 219 (2d Cir. 2004); **Sarno v. Douglas Elliman-Gibbons & Ives, Inc.**, 183 F.3d 155, 160 (2d Cir. 1999).

The evidence provided by Banana Connection in order to demonstrate genuine issues for trial is simply not enough, particularly because "the whole point of the prima facie requirements

in COGSA, as our cases have repeatedly emphasized, is to establish that the damage to the goods occurred while under the supervision of the defendant." **Transatlantic Marine Claims Agency**, 137 F.3d at 99. The Court finds that, because plaintiff has not established that the damage occurred while in either defendant's custody, a determination of whether damage occurred is unnecessary. The defendants' summary judgment motions are **GRANTED**.

**C.     Attorney's Fees**

Howland Hook has requested attorney's fees and costs, stating the company has incurred over $8,500 in fees and costs in defending this action. Scollo Decl. ¶¶ 16, 22. Attorney's fees would only be available in this case if Banana Connection had either initiated or continued this lawsuit in "bad faith, vexatiously, wantonly, or for oppressive reasons." **Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.**, 782 F.2d 329, 344 (2d Cir. 1986) (*quoting* **F.D. Rich Co. v. United States *ex rel.* Indus. Lumber Co.**, 417 U.S. 116, 129 (1974)). *See* **Leather's Best Int'l, Inc. v. M/V Lloyd Sergipe**, 760 F. Supp. 301, 314 (S.D.N.Y. 1991). Such a fee award should be based on "clear evidence" of improper actions. **Dow Chem.**, 782 F.2d at 344 (citations omitted). There is no such evidence here and, therefore, Howland Hook's request for an award of attorney's fees is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the defendants' summary judgment motions are **GRANTED**. Howland Hook's request for an award of attorney's fees is **DENIED**. Case dismissed.

SO ORDERED this 17th day of May 2006
New York, New York

_____
The Honorable Ronald L. Ellis
United States Magistrate Judge